Our next argument is in Collier v. United States. Good morning. May it please the court. My name is James Egan. I represent Keith Collier, who appeals from the District Court's denial of successive 2255 petition. This case involves 2015 Johnson's application to 924C and the mandatory guidelines. As I understand it, there are other cases in this court that are addressing 924C, including Hill and Barrett. My adversary informed me that Hill was amended this morning, and basically they declined to rule on 924C. And they've held that the Hobbs Act robbery in that case satisfies the force or elements clause. But Barrett, I think, is still ahead of this case, and I think others may be. But I would rely on, obviously, the 28J letter and the Tenth Circuit's decision in Salas, which shows how DiMaia basically undermines every reason given by the Hill panel for rejecting Johnson's application to 924C. And to the extent that this Court has any more questions about that, I'd be happy to submit a supplemental briefing, because it wasn't really fully briefed, and in this case, because Hill was in place. Could I ask a preliminary question, please? Sure. How much time remains to be served in Mr. Collier's sentence? Yes. So I looked at the BOP website, and he is projected to be released in August of this year. That, however, is with the application of good time credit, which he may lose. My understanding is that he's in a halfway house reentry center in New York. Where in New York? I mean, if he were to file a 2241 petition, for example, where would he need to do that? Oh, I see. Well, I think he can file it in the district where he is sentenced and convicted, which he did in this case, in the Northern District. Northern District. Yes. So he's in a halfway house, and the sentence with good time expires in August 2018. Correct. Yeah. But I believe without good time, there would be an additional year and a half, I think. I try to work this out. I was just thinking, given the date, it's tricky. Right. And we're on shifting sand here. But obviously this is important to Mr. Collier. So if I could turn now then to the mandatory guidelines issue, which I understand is a case of first impression in this circuit. The government resists relief on two grounds, the timeliness and then obviously that the predicates or incident offense are still crimes of violence. Sorry. I'll start with timeliness. I'm sorry. So the government's, basically the timeliness question, as I understand it, turns on whether applying Johnson to the mandatory guidelines would establish a new rule or whether it would be a mere application of an old rule. And as I understand the government's position and the position of the circuits on which it relies, the fourth, sixth, and tenth, is that essentially Johnson applied to the mandatory guidelines would be a new rule. And that's because essentially they say that Johnson was limited to its holding. We submit that that is an incorrect interpretation of Teague and its progeny. The question, as I framed it earlier, is whether applying Johnson to the mandatory guidelines would be an application of the principles that were embedded in Johnson. And that is to say whether application of the vagueness doctrine to the same residual clause that is relied upon to increase the sentence, essentially fix the sentence, is merely an application of the principle in Johnson. The government argues, well, this is an open question in light of Beckles. That, I would say, is not enough. As we point out, Stringer, complicated, but Stringer Supreme Court case involved a series of death penalty cases about this vague aggravating factor,  and they recognized that following Godfrey, which is the first case in that line, it was an open question whether that would apply to so-called weighing states, where juries weigh aggravating versus mitigating factors. And even though it was recognized as an open question, the court found that answering that question in favor of the defendant did not constitute a new rule. It was merely an application of the old rule, Godfrey. The same is true here. So walk me through that, please. Well, you wanted me to walk you through the Godfrey line of cases or the open versus... I'm wrestling with whether the Supreme Court has announced a rule that is intended to be retroactive. Right. You're not alone. I've been wrestling this for a while, and what it seems clear to me is that really what we're asking is not... The question is different than what was posed by the circuits relied on by the government before 6 and 10, and that is, is it a new rule? They say because it would essentially... It would break new ground because it would essentially deviate from Beckles slightly. Beckles is the advisory guideline case. Of course. So the question really kind of boils down to how mandatory were the guidelines at the time that Collier was sentenced in 1996 or 7? 1997. And I think the Supreme Court already answered that question in Booker, in Irizarry, in the post-Booker line of cases, and indeed in the pre-Booker line of cases, that the court... What it really comes down to is what we're talking about is discretion. How much discretion does the court have and what kind of discretion does the court have? And I think what Kuhn and Booker and Irizarry kind of get at is that what we're talking about is could the court just simply disagree with the commission on policy grounds and impose a different sentence in light of the other 3553A2 factors? And they couldn't, and the Supreme Court has answered that. And indeed, there would be no reason for Booker if the guidelines were not, if they didn't fix sentences in the way that's important here. Well, pre-Booker, I'm not sure I understood, but you can just abuse me of the notion, that a district court applying an analysis didn't have a... didn't have the authority or the power to diverge from the guidelines, and it was going to be a fairly rare decision in the appeals court that was going to undo a district court's proper exercise of discretion in that regard. Certainly, and I think the answer to that question is that what was the source of that discretion? Did it come from Congress or did it come from the judge in deciding that particular case? And the guidelines, as envisioned by Congress, as enacted by Congress, and as enacted by the Sentence Commission, pursuant to the delegation, said that you could only depart based on reasons given by the commission or if you found a reason that was not adequately taken into account by the commission. And then finally, if there's outside-of-the-heartland case, this sort of idea. But in each of those cases, it was narrowly fettered. The court couldn't just sort of disagree, like now, say, well, I consider under 3553A2 that this crime is not, you know, not deserving as much time as the commission thinks it is. Not because it's committed in a unique way, but because I think the commission is just wrong about how it crafted the guidelines. Thank you, Mr. Egan. You have reserved two minutes for rebuttal. Okay. Thank you. Let's hear from Mr. Clymer. May it please the Court, Stephen Clymer for the United States. This Court should affirm the lower court's denial of Mr. Collier's 2255 motion for several reasons. Principally, the motion was untimely. As the Court knows, Mr. Collier did not file his motion within a year of the time his conviction became final. As a result, he relied on Johnson 2015 and claimed that that was the rule he was relying on. But his motion clearly does not rely on the rule in that case, which dealt with the Armed Career Criminal Act. Instead, he makes the claim that Johnson 2015 clearly settled, with no dispute among reasonable jurists, that the career offender, I'm sorry, that the crime of violence residual clause in the pre-Booker guidelines was unconstitutional. So I have a concern about the timeliness argument, which is I don't understand how the defendant's sentence under the mandatory guidelines who wish to challenge the residual clause that was the basis for a sentencing enhancement. Most of those people will have been sentenced long ago. And the government will always have an argument that the one-year statute has elapsed. And it seems important at the same time that the Supreme Court consider the effects of a decision on the residual clause in the context of mandatory guidelines, where district courts had much less discretion in applying the enhancements. And it seems like they may be serving an illegal sentence, ultimately, under the reasoning that the Supreme Court has used as to the residual clause. But yet, because of the AEDPA rules, the question evades review. Do you have a solution to my concern? The only potential solution is the government could waive or give up its timing claim in the 2255 motion and allow the merits to be reached. But short of that, Your Honor, I have to be candid with you, no, there is no solution. I think it very well may be the case that that is a legal issue that the courts will never be able to address. And the reason for that is Congress made a determination when it amended 2255 to limit the types of claims. We may look at that, and some reasonable people may not like that outcome. Well, of course it did that in the context before some of these rulings were handed down. So, you know, it's a little hard to discern Congress's intent. But, Your Honor, there's a Supreme Court decision called, I believe, Dunn, that addresses a similar issue, which is in order to satisfy the F3 subsection that's being used here, not only must the Supreme Court announce a new right, but that right has to be made retroactive.  So there's a delay in time until there's a decision announcing that it's retroactive. And the Supreme Court has said if that delay before it's made retroactive is close to a year or a year or longer than a year, the rule still applies. That's when the clock starts to run. So in that circumstance, just like the circumstance you posit as exists here, there may be situations where we would look at the substantive law and say, well, this defendant ought to be entitled to relief, but yet under 2255, as Congress has written it, he's not entitled to relief. I'm not endorsing that as a fair outcome. That is what the law requires. But the government could waive that. Absolutely. So if there was a case, we could do it. And given that there's a systemic issue, it would seem appropriate for the government to give that serious consideration. I think the government might want to give it serious consideration, not simply when there's a systemic issue, but when it would work an injustice in a particular case. In other words, when the government looked at the merits of the case and said under these facts, this defendant ought to be entitled to relief. That is not this case. And so I will just say a couple things about the timing, and then I'll explain to you why I don't think that that is. On the issue of timeliness, you haven't raised an issue of timeliness with respect to the 924C claim. Is that right? You've raised it only with respect to the guideline claim. No, Your Honor. Our timeliness assertion is with respect to the motion entirely. Why would it apply to the 924C claim? I don't believe he raised it with respect to the 924C claim. I think it wasn't raised with respect to that. But it's the government's obligation to raise the issue that it's untimely, isn't it? If the motion raises that issue, yes, it is. I'm not sure his motion raised that issue. So if the issue of timeliness is not raised with respect to the 924C issue, then there's no issue of timeliness with respect to the 924C issue. Your Honor, we made a claim in the lower court that the motion itself should be rejected as untimely. We have reasserted that same claim here. How could it apply to the 924C claim? It's not an argument that the argument raised under 924C has nothing to do with the issue of Johnson's application to the mandatory guidelines. It's a straight Johnson issue with respect to 924C. It has to do with whether Johnson applies to 924C. Yes, but, yes. But that eliminates all of your argument about the timeliness of a claim directed to the guidelines and whether the effect of Johnson-Beckles indicated that Johnson wasn't establishing a rule for the mandatory guidelines. The 924C argument is the direct application of, if it were true, Johnson as it applies to 924C. I agree with you, Your Honor, that our pleadings in this court did not raise specifically the claim that Johnson 2015 does not apply to the residual clause in 924C. We did not make that assertion. I'm going to agree with you. I think we may disagree about the legal effect of that, but I am going to agree with you. But we have to consider 924C separately from the timeliness argument. In any event, Your Honor, I am not taking the position in this court today that the residual clause in 924C should be the basis for a merits decision. We are no longer relying on 924C in light of DeMaia and in light of this court's decision today in the Hill case. But you say the 924C conviction should be upheld because it met the force elements of 924C. Exactly, Your Honor. That is our position. And I'll just say very briefly on that before I move to the robbery. Actually, if I could go back and make one comment about the timing, then go on to that and then go on to the robbery, the New York State robbery convictions. With respect to the timing issue, three courts have addressed this now, the Fourth Circuit, the Sixth Circuit, and the Tenth Circuit. Eight out of the nine judges who have looked at this have reached the conclusion that Johnson 2015 does not apply to the pre-Booker guidelines. By definition, it cannot be said that all reasonable jurists agree to that application. That by itself defeats the timing claim of the defense, and I believe ought to end the inquiry, at least with respect to the guidelines claims, if not the 924C claim. With respect to the 924C claim on the merits, every circuit that has addressed the issue about federal bank robbery, either with respect to 924C or the guidelines, has said that it satisfies the elements clause. At least seven circuits have addressed it. All seven have reached that conclusion with respect to either 924C, with respect to the guidelines, or with respect to both. That gets me to the New York State robbery convictions. It's our argument, first of all, that the residual clause applies here. And that if the court has to or decides to reach the decision of the merits, the pre-Booker residual clause should survive in the guidelines for two reasons. First of all, it does not pertain or govern conduct. One of the principal pillars of vagueness doctrine is it has to give notice to the public so they know if their conduct is legal or illegal. That rationale is inapplicable to any sentencing guideline regime, as the Supreme Court pointed out in Booker. The second reason is, as some of the questions today pointed out, the pre-Booker guidelines were not, quote, mandatory in the sense the Armed Career Criminal Act in Johnson 2015 was mandatory. District court judges retained, as the Supreme Court said in Kuhn, substantial discretion as they had before the guidelines were enacted at all. And Kuhn made clear that appellate court review of district court sentencing discretion under the pre-Booker guidelines was substantial deference. So judges under 5K2.0, the version that existed back when Mr. Colley was sentenced, had considerable discretion to depart. And they could depart even for reasons the guidelines had identified as adjustments or specific offense characteristics if they thought the guidelines had insufficiently credited whatever those adjustments were. So there was a lot of discretion at the time. I see my time is up. May I continue? The final point I will make is even if this court disagrees with me on the timing claim, even if it disagrees with me on the claim that Beckles ought to apply to the pre-Booker guidelines, Mr. Collier's claim still should fail in the merits because the elements clause in the guidelines is sufficient to encompass New York State robbery. And I just encourage the court to look at Brown, Spencer, and Miles, which are all still good law in this circuit, and in any event, look at the recent Sixth Court decision, Sixth Circuit decision, excuse me, in Perez, which we cited to the court in a 28-J letter. Unless the court has other questions, I'm finished. Thank you, Mr. Clymer. Mr. Egan, you have two minutes. Thank you, Your Honor. I think the government's timeliness argument proceeds from a false premise that there has to be unanimity of opinion about whether application of Johnson to the mandatory guidelines applies. In fact, Stringer, the Supreme Court case I referenced earlier, says the mere existence of conflicting opinions is not enough to make a rule new. And also look at Justice O'Connor's concurrent opinion in Wright v. West, where she says all that's required is that the new application of the new rule be closely analogous to the existing rule. Moving to timeliness, Judge Kotal, you asked about 924C, whether it was brought up. We argued in our motion on JA-65 that the petition was timely as a whole. And the government, I think, argues, but maybe their concession that the residual clause, as I understand it, they're abandoning the residual clause, so it may not matter. But they never argued timeliness as to 924C. Now, if we're looking at the elements clause, point the court to the First Circuit's decision in Steed, which disagreed, or the Sixth Circuit's decision in Perez, which the government just cited, went the other way and found that the New York robbery does not satisfy the elements clause. The government relies on commentary. Should argue why that commentary is not applicable. There are other reasons, agency reasons. But at its bottom, without the residual clause, the commentary has no effect. It's not some freestanding clause that the court can resort to. If there are no more questions, I'll yield. Thank you. Thank you, Mr. Chairman. Thank you. Thank you both. We will reserve decision in this case.